# TYRE & SPRING WORKS COMPANY *v.* SPALDING.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

Submitted January 8, 1886.—Decided February 1, 1886.

Under these provisions as to duties on imports, in Schedule E of section 2504 of the Revised Statutes (2d ed., p. 465) : "All manufactures of steel, or of which steel shall be a component part, not otherwise provided for : forty-five per centum ad valorem. But all articles of steel partially manufactured, not otherwise provided for, shall pay the same rate of duty as if wholly manufactured." "Locomotive tire, or parts thereof : three cents per pound." "Steel, in any form, not otherwise provided for : thirty per centum ad valorem," (p. 466), articles known as "steel tire blooms," and which have passed through an important stage in the process of manufacture into steel tires, but are not shown to have been adapted or intended to be made into tires for the driving-wheels of locomotives, are dutiable at forty-five per cent. ad valorem.

Where a case is tried by a Circuit Court, without a jury, and that court makes a special finding of facts, but omits to find certain facts which a stipulation between the parties, made after the entry of judgment, states were shown by proof at the trial, this court, on a writ of error, can take notice only of the facts contained in the special finding.

The facts which make the case are stated in the opinion of the court.

*Mr. Percy L. Shuman* for plaintiff in error.

*Mr. Assistant Attorney-General Maury* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The Chicago Tyre and Spring Works Company, an Illinois corporation, brought this suit against Jesse Spalding, Collector of Customs at Chicago, in the Circuit Court of the United States for the Northern District of Illinois, to recover moneys alleged to have been illegally exacted as duties on imported merchandise embraced in three entries made at the customhouse in Chicago in 1882. The declaration did not mention what the merchandise was. After plea, the parties stipulated in writing that the cause should be tried by the court without

a jury. It was so tried, and on the 31st of January, 1884, the following entry, entitled in the suit and headed "Judgment," was made in the records of the court:

"This day came the plaintiff and defendant, by their attorneys, and, the parties having heretofore filed their stipulation in writing, waiving a jury, and submitting the facts in issue to the court, and the court having heard the evidence and arguments of counsel, and duly considered the same, now finds that the steel-tire blooms, in the declaration mentioned, are produced by first casting a flat round ingot of steel, somewhat in the shape of a cheese or grindstone, with no hole through the centre. It is then reheated and hammered, so as to reduce its thickness, thereby compacting its grain or fibre; a hole is swedged through its centre; and it is then hammered on the horn or beak of an anvil, thereby expanding its circumference, and forming a grain or fibre in its circumferential direction, and, when intended for tires of driving-wheels, the rudiments of a flange are formed or swedged also upon the outer periphery of the circle. In this form these blooms are ready for rolling, and are imported at this stage of development. On arriving in this country, they are heated and placed in the rolling-machine, where they are rolled or spun into the size and shape adapting them for use for tires for locomotive driving-wheels or car-wheels, and, after being rolled, the inner and outer surfaces are turned and finished in a lathe. The court finds that, when imported, these blooms had passed through an important stage in the process of manufacture into steel tires, and are, therefore, articles of steel partly manufactured, and were, therefore, properly classified for duties as manufactures of steel, not otherwise provided for. The court, therefore, finds the issues joined for the defendant. And thereupon the plaintiff, by its attorney, moves the court for a new trial herein, and the court, being now fully advised upon said motion, overrules the same and awards judgment. It is thereupon considered and adjudged, by the court, that the defendant do have and recover of the plaintiff his costs in this behalf expended, amounting to —— dollars and —— cents, and that he have execution therefor."

On the same day the following stipulation, entitled in the cause and signed by the attorneys for the parties, was filed:

"It is hereby stipulated and agreed between the parties to the above-entitled cause, that, on the trial of the same, it was proved that the plaintiff imported the steel blooms mentioned in the pleadings and proofs in this case, at the port of Chicago, during the year 1882, and entered them at the custom-house as steel blooms, and that the same were assessed a duty of 45 per cent. ad valorem, by the defendant, collector, as 'manufactures of steel, not otherwise provided for,' under the provisions of Schedule E, § 2504, Revised Statutes; that the plaintiff paid the duty levied thereon, under protest, and in apt time took an appeal to the Secretary of the Treasury, claiming therein that the blooms in question were not dutiable as manufactures of steel, not otherwise provided for, and were not specially provided for by name in the tariff, but were dutiable at the rate of 30 per cent. ad valorem, as 'steel, in any form, not otherwise provided for,' under the provisions of Schedule E of the same section; that the Secretary of the Treasury decided such appeal, affirming the action of the collector, and that this suit was afterwards commenced, in due time, to recover the fifteen per cent. duty alleged to have been collected in excess, and so paid under protest; that issue was joined, and, a jury having been waived in accordance with the statute, the case was submitted to the Court for trial; that the proof shows that the steel tire blooms in question are produced by first casting a flat round ingot of steel, somewhat in the shape of a cheese or grindstone, with no hole through the centre. It is then reheated and hammered, so as to reduce its thickness, thereby compacting its grain or fibre; a hole is swedged through its centre; and it is then hammered on the horn or beak of an anvil, thereby expanding its circumference, and forming a grain or fibre in its circumferential direction, and, when intended for tires, the rudiments of a flange are formed or swedged also upon the outer periphery of the circle. In this form, these blooms are ready for rolling and are imported at this stage of development. On arrival in this country, they are reheated and placed in the rolling-machine, where they are rolled or

spun into the size or shape adapting them for use for tires for locomotive driving-wheels or car-wheels, and, after being rolled, the inner and outer surfaces are turned and finished in a lathe; the work which had been expended on them to bring them from the ingot stage to tire blooms is shown to have been equal to ten r fifteen dollars per ton; that these blooms are classed in trade and commerce with steel bars, steel ingots, steel billets, steel rail blooms, steel plates, and all sorts of forgings, and are forms of steel known in trade and commerce as steel tire blooms; that a steel casting which has been hammered ready for rolling is a bloom; that hammering an ingot to prepare it for rolling is called blooming, regardless of the shape into which the steel is made by rolling or hammering; that, when imported, these blooms were ready for rolling and were imported at this stage of development. And the Court, after hearing all of the evidence, found, that, when imported, these blooms had passed through an important stage in the process of manufacture into steel tires, and are, therefore, articles of steel partly manufactured, and were, therefore, properly classified for duties as manufactures of steel, not otherwise provided for. And the Court found the issues for the defendant. That the plaintiff excepted to said finding of the Court, viz., that the blooms were properly classified for duties as manufactures of steel, not otherwise provided for, as not being in accordance with the evidence, and moved the Court to grant a new trial, which motion was overruled and judgment was entered for the defendant."

There is no bill of exceptions, but the plaintiff has sued out a writ of error to review the judgment.

Schedule E of § 2504 of the Revised Statutes, 2d ed., p. 465, in force at the time of these entries, contains the following provisions as to duties on imports:

"All manufactures of steel, or of which steel shall be a component part, not otherwise provided for: forty-five per centum ad valorem. But all articles of steel partially manufactured, or of which steel shall be a component part, not otherwise provided for, shall pay the same rate of duty as if wholly manufactured."

"Locomotive tire, or parts thereof: three cents per pound."

"Steel, in ingots, bars, coils, sheets, and steel wire, not less than one-fourth of one inch in diameter, valued at seven cents per pound or less : two cents and one-fourth per pound ; valued at above seven cents and not above eleven cents per pound : three cents per pound ; valued at above eleven cents per pound : three cents and a half per pound, and ten per centum ad valorem." p. 466.

"Steel, in any form, not otherwise provided for : thirty per centum ad valorem." p. 466.

The contention on the part of the plaintiff is, that the articles in question were merely steel blooms, not manufactured articles, or partially manufactured articles, but only forms of steel, called steel tire blooms, and, therefore, subject to a duty of 30 per cent. ad valorem, and not to a duty of 45 per cent. ad valorem.

The court, in the paper which contains the judgment, finds certain facts, evidently intended to be facts specially found, under § 649 of the Revised Statutes. On these facts it bases its conclusion of law, that the articles were properly classified for duties as manufactures of steel, not otherwise provided for, and its judgment for the defendant. The stipulation in the record, above set forth, is a paper signed after the trial, intended to take the place and serve the purpose of a duly signed bill of exceptions. It states what was proved on the trial as to the importations, the entries, the assessments and payments of duties, the protests, the appeals, the action thereon, and the bringing of the suit in time. It then states what the proof showed, on the trial, as to the manner of producing the steel tire blooms in question, and as to their condition, when imported, and as to how they were treated on their arrival in this country. It then states what the proof showed as to the value per ton of the work put on them from the ingot stage until they arrived at the condition in which they were imported ; and as to how they were classed and known in trade and commerce ; and as to what a bloom and blooming are ; but these last mentioned matters are none of them found as facts by the court, in its findings. The stipulation then states what the court found, as a conclusion of law, and that the

plaintiff excepted thereto. On this state of the record, this court is authorized, under section 700 of the Revised Statutes, to determine whether the facts specially found by the Circuit Court are sufficient to support the judgment; but it can take no notice of any facts not thus specially found, because they were not found by the court below, and this court, as an appellate court, cannot try an issue of fact. The stipulation, however, does not contain any agreement as to the existence of any facts, but merely a statement as to what the proof showed on the trial; and does not state that the parties agreed, in advance, on the facts found by the court, or how they were proved; but states that the court heard all the evidence. As to any facts stated in the stipulation to have been shown by proof at the trial, if they are not contained in the special findings, the only conclusion can be that the court did not find them to be facts. So, the case must be adjudicated on the special findings alone.

In the findings, the articles are described as "steel tire blooms;" not only steel and blooms, but steel tire blooms. This would indicate that they were steel blooms having some purpose in connection with tires. It is then set forth how they are produced. A flat round ingot of steel, somewhat in the shape of a cheese or a grindstone, is cast, but without a hole in its centre. It is then reheated and hammered, so as to reduce its thickness, thereby compacting its grain or fibre. A hole is then swedged through its centre, and it is then hammered on the horn or beak of an anvil, thereby expanding its circumference, and forming a grain or fibre in its circumferential direction. It is plain, so far, that the articles are being put into a shape in which they can be worked into tires, either for the driving-wheels of locomotives or for car-wheels, depending on their size, shape and weight. The findings go on to say, that, "when intended for tires of driving-wheels, the rudiments of a flange are formed or swedged also upon the outer periphery of the circle." This is not a statement as to whether these particular blooms were intended to be tires for driving-wheels or for car-wheels. It is then stated that the blooms are ready for rolling and are imported at this stage.

Then it is said: " On arriving in this country, they are heated and placed in the rolling-machine, where they are rolled or spun into the size and shape adapting them for use for tires for locomotive driving-wheels or car-wheels, and, after being rolled, the inner and outer surfaces are turned and finished in a lathe." But this is not a statement as to whether these particular blooms were adapted or intended to be made into tires for driving-wheels, or for car-wheels, or for both, or some for one and some for the other.

It is not found by the court that these blooms were partly manufactured tires for the driving-wheels of locomotives. On the contrary, the concluding statement in the findings is, that " these blooms had passed through an important stage in the process of manufacture into steel tires." They may all have been blooms of which only tires for car-wheels, and no tires for driving-wheels, could have been made, or were intended to be made. The collector and the Secretary of the Treasury may have so decided. Those decisions stand and are conclusive, under § 2931 of the Revised Statutes, until the contrary is shown in a suit. *Arnson* v. *Murphy*, 115 U. S. 579. The contrary is not shown. The case is not one of a doubt as to the meaning of the statute, or of a doubt as to what statute applies to a specific article ; but is one of a failure of the importer to show that the decisions of the collector and of the Secretary as to the rate and amount of duties were erroneous. These views also meet the suggestion of the plaintiff, that, if these steel blooms were partially manufactured locomotive tires or parts of tires, they were dutiable at three cents per pound. The stipulation states that the protest was that the articles were not specially provided for by name in the tariff, but were liable to the thirty per cent. duty, and not to the forty-five.

It being assumed, as it must be on the findings, that these blooms were adapted and intended for tires for car-wheels, and not for driving-wheels, it is clear, we think, that they were partially manufactured tires of that character, and were not otherwise provided for, and were subject to forty-five per cent. duty, and were not subject to thirty per cent. duty, because, though

forms of steel, they were provided for under the forty-five per cent. clause.

It is conceded by the Government, that, if these blooms were ordinary steel blooms, that is, merely hammered steel castings, they would not be articles of steel partially manufactured or liable to forty-five per cent. duty, but would be liable to only thirty per cent. duty. But the hammering on the horn of the anvil formed a grain or fibre circumferentially, and this is what the court, in its findings, called the "important stage" through which the blooms had passed, "in the process of manufacture into steel tires."

*Judgment affirmed.*