## HERRMAN v. ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 280.   Argued March 14, 1894.—Decided April 2, 1894.

An importation of goods into the port of New York in 1881 being classified
under the first clause of Rev. Stat. § 2499 by the customs officers, as
bearing a similitude to manufactures composed wholly or in part of the
hair of the alpaca, goat, or other like animals, the importer paid the
duties demanded under that classification, — 50 cents per pound and 35
per cent ad valorem, — first protesting that the goods. were " composed
of hair and cotton only, and as such should pay a duty of 35 per cent ad
valorem, as a non-enumerated article under the second half of Rev. Stat.
§ 2499, being the highest rate of duty which any of the component mate-
rial pays."   In an action brought by the importer to recover the alleged
excess of duties so demanded and collected, *Held*, that this protest was
defective in that it failed to point out or suggest, in any way, the provi-
sion which actually controlled, and in effect only raised the question
which of two clauses, under one or the other of which it was assumed
that the importation came, should govern as being most applicable.

ACTION to recover duties paid under protest.   Trial by jury,
and bill of exceptions as follows :

" This action was brought to recover the difference in duty
between 35 per cent ad valorem and various higher rates of
duty assessed and paid upon certain goods imported by plain-
tiffs at the port of New York in the year 1881.

"Duties were paid to defendant under protest as follows:
Against defendant's liquidation claiming 'The goods in ques-
tion are liquidated by you as being liable to a duty of 50 cents
per pound and 35 per cent ad val.

" ' We claim the goods are composed of hair and cotton only,
and as such should pay a duty of 35 per cent ad val. as a non-
enumerated article under the second half of section 2499, Rev.
Stat., being the highest rate of duty which any of the compo-
nent material pays.'

"Plaintiffs thereafter, in due time, appealed and brought
this suit,

"Further to maintain the issues on their part, plaintiffs

introduced samples of the goods in question and evidence tending to show from an analysis their component material to be calf hair and cotton exclusively. Among other evidence on this point a report as to these samples from Prof. Torrey, an expert witness, was verified by him, and on this point was as follows:

" ' The sample marked " C 386 " by the Republic, August 12, 1887, found to contain 87.4 calf hair and 12.6 cotton by weight.

" ' The next sample, " 292," Arizona, August 20, 1887, 86.6 calf hair and 13.4 cotton.

" ' Sample 760, Alaska, December 1887, 88.5 calf hair and 11.5 cotton.

" ' H. T. 2680, 85.6 calf hair and 14.4 cotton.

" ' H. T. 2759, 86.1 calf hair and 13.9 cotton.

" ' The above samples were all composed of calf hair and cotton, with no admixture of wool that could be detected by the aid of the microscope.

" ' (Signed H. G. Torrey, government examiner of textile fabrics.) '

" There was no admixture of wool in the goods.

" It further appeared that the goods in question were a low grade of calf-hair goods. It further appeared that they cost less than forty cents per pound, the foreign value per running yard being from one shilling and ten pence to two pence.

" Plaintiffs having rested, counsel for defendant, without introducing any evidence, moved the court to direct a verdict for the defendant; which motion was granted and the counsel for the plaintiffs then and there duly excepted, and the exception was allowed."

The verdict having been returned as directed and judgment been entered thereon, plaintiffs brought the case to this court on writ of error.

*Mr. Edwin B. Smith* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The claim made by the protest was that these goods were dutiable, as non-enumerated, under the last clause of section 2499,[1] at thirty-five per cent ad valorem, as being composed of hair and cotton only, and the cotton chargeable at a higher rate than calf hair. The report of the case, 41 Fed. Rep. 881, shows, and it is so asserted by the government, that the goods were classified under the first clause of that section as bearing a similitude to manufactures composed wholly or in part of "the hair of the alpaca, goat, or other like animals," as provided by the twelfth paragraph of class three of Schedule L, section 2504, Revised Statutes, (2d ed. 471,) and therefore dutiable at twenty, thirty, forty, or fifty cents per pound, according to value, in addition to thirty-five per centum ad valorem. According to the protest, the liquidation was at fifty cents per pound in addition to the thirty-five per cent; according to the bill of exceptions, at "various higher rates" than the thirty-five per cent; and, according to the case as reported, the exaction was at twenty cents per pound and thirty-five per cent ad valorem. What the classification actually was is not shown by the bill of exceptions, but if it were as reported, there is nothing in the record to overcome the presumption in favor of the correctness of the collector's action, and *Arthur* v. *Fox*, 108 U. S. 125, would be in point. But it is admitted that the Circuit Court held that the decis-

---

[1] "SEC. 2499. There shall be levied, collected, and paid, on each and every non-enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this Title, as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles, on which different rates of duty are chargeable, there shall be levied, collected, and paid, on such non-enumerated article, the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable."

ion in *Arthur* v. *Butterfield*, 125 U. S. 70, applied, and that the goods were manufactures of hair, and as such provided for by the clause in Schedule M, section 2504, Revised Statutes, (2d ed. 476,) under the phrase "and all other manufactures of hair, not otherwise provided for, thirty per centum ad valorem," and therefore, being enumerated, were not within section 2499.

The ruling in *Arthur* v. *Butterfield* was that "goat's-hair goods," composed of eighty per cent of goat's hair and twenty per cent of cotton, came within the clause last above referred to, and that "in the absence of a settled designation of a cloth by merchants and importers, its designation as hair, silk, cotton, or woollen for the purposes of customs revenue depends upon the predominance of such article in its composition, and not upon the absence of any other material." Counsel for plaintiffs in error conceded in argument that that case would be applicable if these fabrics had been eighty per cent of hair in value, but insisted that there was no proof that the hair was the main element of value, and that it did not follow that the relative values accorded with the relative weights. But the bill of exceptions does not exclude the inference that there was evidence of relative value or that counsel assumed that goods consisting by weight of eighty-five and one-half to eighty-eight and one-half per cent of calf's hair to eleven and one-half to fourteen and one-half per cent of cotton were to be taken as containing eighty per cent of hair in value as compared with the value of the cotton.

The case was disposed of below on the question of the sufficiency of the protest, and that is really the only question for consideration here.

The requisition of the statute, Rev. Stat. §§ 2931, 3011; Act of Feb. 27, 1877, c. 69, 19 Stat. 240, 247, as to the notice to be given the collector, in order to recover back an excess of duties paid, is thus expounded by Mr. Justice Clifford in *Davies* v. *Arthur*, 96 U. S. 148, 151.

"Protests of the kind must contain a distinct and clear specification of each substantive ground of objection to the payment of the duties. Technical precision is not required;

but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated. *Burgess* v. *Converse,* 2 Curt. 223.

" Two objects, says Judge Curtis, were intended to be accomplished by the provision in the act of Congress requiring such a protest : 1. To apprise the collector of the objections entertained by the importer, before it should be too late to remove them, if capable of being removed. 2. To hold the importer to the objections which he then contemplated, and on which he really acted, and prevent him, or others in his behalf, from seeking out defects in the proceedings, after the business should be closed, by the payment of the money into the Treasury. *Warren* v. *Peaselee,* 2 Curt. 235 ; *Thomson* v. *Maxwell,* 2 Blatchf. 392."

And this is reiterated in substance by Mr. Justice Blatchford in *Arthur* v. *Morgan,* 112 U. S. 495, 501, where he said for the court : " A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure." That was the case of the importation of a carriage, claimed in the protest to be " personal effects " used by the owner " over a year " before importation, it being also stated that " personal effects in actual use " were free from duty, whereas the carriage came under the head " household effects in use abroad not less than one year." Personal effects in actual use and household effects if used abroad not less than one year were alike exempt from duty, and as the error was plainly clerical and could not have misled the collector, the protest was held sufficient.

In *Heinze* v. *Arthur's Executors,* 144 U. S. 28, 34, the goods were gloves made on frames and composed of cotton and silk,

in which cotton was the component part of chief value, and were dutiable at thirty-five per cent ad valorem, less ten per cent, as gloves made on frames of whatever material composed. The collector rated them at sixty per cent ad valorem as "ready-made clothing of silk, or of which silk shall be a component material of chief value," or "silk gloves."

The protest specifically stated that the goods were "partly cotton gloves mixed with silk," and "composed of cotton and silk, cotton, chief part, the duty of 60 per cent being only legal where silk is the chief part," and that the gloves were liable to a duty of only thirty-five per cent, less ten per cent. The objection was that the protest did not state that the gloves were made on frames, and this court held, again speaking through Mr. Justice Blatchford, that: "It is entirely immaterial that the protest did not specify that the gloves were made on frames. It was sufficient to state that the gloves were composed of cotton and silk, and that the cotton was the component material or part of chief value, and the silk was not the component material of chief value. The importers were bound only to state, as they did, that the duty of 60 per cent was illegal, and why it was illegal."

In the case at bar, the goods were apparently classified under the similitude clause, but that was not correct because they were to be regarded as "manufactures of hair," and therefore enumerated.

But the importers also insisted that the goods were non-enumerated, and did not assert that they were not within the clause relied on by the collector, save as it was objected that they came under the last clause of section 2499, which was likewise incorrect. The protest failed to point out or suggest in any way the provision which actually controlled, and in effect only raised the question which of two clauses, under one or the other of which it was assumed that the importation came, should govern as being most applicable. We agree with the Circuit Court in holding the protest to have been insufficient.                              *Judgment affirmed.*

Mr. Justice Jackson was not present when this case was argued, and took no part in its decision.