BATTLE & CO. CHEMISTS' CORP. v. UNITED STATES.

(Circuit Court, E. D. Missouri, E. D.   April 17, 1901.)

Nos. 4,216, 4,299.

1. CUSTOMS DUTIES—CLASSIFICATION—CHLORAL HYDRATE. ·
    Chloral hydrate is dutiable under paragraph 67 of the tariff act of 1897, as a medicinal preparation in the preparation of which alcohol is used, not specifically provided for, and not under paragraph 3, Schedule A, as a chemical compound not specifically provided for. Being both a chemical compound and a medicinal preparation in the preparation of which alcohol is used, it is classifiable as the latter, because such description is the more specific.

2. SAME—PROTEST—SPECIFICATION OF OBJECTIONS.
    An importer must stand on the objections made in his protest, and cannot vary from nor enlarge them on the trial, nor in his petition for review. Where an article was classified as a medicinal preparation in the preparation of which alcohol was used, and the only ground of protest was that, conceding it to be such preparation, it was not dutiable as such, but as a chemical compound, the importer cannot insist, in proceedings to review the action of the board of general appraisers, that the classification was incorrect because it does not appear that alcohol was used in the preparation of the particular article imported, which might have been prepared otherwise.

Petition by importers to review the decision of the board of general appraisers affirming the classification for duty of certain imported merchandise.

Dickson & Smith, for plaintiff.

E. A. Rozier, U. S. Dist. Atty., and Geo. C. Hitchcock, Asst. U. S. Dist. Atty.

ADAMS, District Judge. In 1898, the plaintiff, which is a corporation organized under the laws of the state of Missouri, engaged in the manufacture of drugs and proprietary medicines, imported into this country 3,000 pounds of chloral hydrate, which was classified by

the collector of the port of St. Louis as a "medicinal preparation," within the meaning of paragraph 67 of the tariff act of July 24, 1897, and duty was assessed thereon at 55 cents per pound. On January 7, 1899, the duty so assessed was liquidated by the importer, and in due time a protest was filed, claiming that chloral hydrate should be assessed under paragraph 3, Schedule A, of the tariff act of 1897, as a "chemical compound," for the reason assigned that chloral hydrate is not a "medicinal preparation," within the meaning of the tariff law, but is a "chemical compound," and should be classified as such. The protest was duly considered by the board of general appraisers at New York, and overruled. Plaintiff then filed its petition in this court for a review of the decision of the board of general appraisers, and to recover the difference between the duty paid and that which should have been paid. The evidence before the court consists of the original return of the board of general appraisers made pursuant to the order of this court requiring that the board certify its proceedings here; the testimony, so far as the same is applicable, found in the transcript of record of a former case heard in this court between the same parties; and also the testimony of certain witnesses taken by the board of general appraisers in New York pursuant to an order of this court.

Paragraph 67 of the act of 1897 is as follows:

"Medicinal preparations containing alcohol or in the preparation of which alcohol is used, not specifically provided for in this act, 55 cents per pound, but in no case shall the same be less than 25 per cent. ad valorem."

Paragraph 3, Schedule A, of the act of 1897, is as follows:

"Alkalies, alkaloids, distilled oils, essential oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specifically provided for in this act, 35 per cent. ad valorem."

The only question for consideration in this case arising on the protest of the plaintiff is whether the collector of the port at St. Louis and the board of general appraisers at New York should have classified the "chloral hydrate" in question as a "chemical compound" or a "medicinal preparation." The court of appeals of the Eighth circuit had a similar question before it in the case of U. S. v. Battle & Co. Chemists' Corp., 4 C. C. A. 249, 54 Fed. 141, arising under the tariff act of 1890, in a suit between these same parties with reference to the same article of merchandise, and that court reached a conclusion, on the record before it, that "chloral hydrate" was, within the meaning of the tariff act of 1890, a "chemical compound," and not a "medicinal preparation," and should be classified as such for the purpose of assessing and liquidating duties thereon. Since the decision of that case, the supreme court of the United States, in the case of Fink v. U. S., 170 U. S. 584, 18 Sup. Ct. 770, 42 L. Ed. 1153, has had occasion to determine the classification of "muriate of cocaine" under the tariff act of 1890. The question presented in that case was whether "muriate of cocaine" should be classified as a "medicinal preparation" of which alcohol is a component part, or in the preparation of which alcohol is used, or whether it should be classified as a "chemical compound" not specially provided for in the act. The tariff act of 1890 is in no essential respect different, so far as the

question now under consideration is concerned, from the act of 1897. All medicinal preparations of which alcohol was a component part, or in the preparation of which alcohol was used, were made dutiable at 50 cents per pound, instead of 55 cents per pound, as provided by the act of 1897; and all chemical compounds and salts not specifically provided for in that act were made dutiable at 25 per cent. ad valorem, instead of 35 per cent. ad valorem, as provided by the act of 1897. The particular article of importation involved in the Fink Case was an alkaloidal salt, and which is very frequently referred to as a chemical salt, and as falling clearly within the generic term "chemical compounds and salts," as found both in the acts of 1890 and 1897. The evidence before the court in this case satisfactorily shows that "hydrate of chloral" is used exclusively as a medicine. The evidence that it is employed in the arts is very slight, and not sufficient to inspire the conviction that such use is of any practical importance. The evidence also satisfactorily shows that chloral hydrate, although, generically speaking, a "chemical compound" of hydrogen, oxygen, and chlorine, is distinctively known in trade and commerce as a "medicinal preparation"; and although it is imported and sold to druggists and pharmacists in crystalline form, it is in that form a preparation for use medicinally, requiring no further chemical reactions for that purpose. It is true it is not commonly administered to the patient in its crystalline form, but is dissolved in water or syrup. This, however, is not for the purpose of chemically changing its substance or quality in any manner, but for the purpose only of providing a vehicle to convey it to the stomach. I do not think the evidence, taken as a whole, establishes the proposition of fact contended for by plaintiff that a "medicinal preparation," as used either in commerce or by the medical profession, is merely and only such a preparation of drugs and chemicals as is fitted and ready by itself for the use of the patient. If such were the case, as one of the witnesses properly remarks, the term would be limited in its application practically to patent medicines. The term, in my opinion, as shown by all the evidence in the case, rather means any preparation used for remedial purposes for the ailments of the human and animal body. But, even if the limited meaning contended for by plaintiff be given to it, I do not believe the use of water merely as a solvent to act as a vehicle for introducing the drug into the stomach is such a further preparation of the drug as changes it from one not prepared for the patient to one so prepared. It is the same thing either way,— a preparation used by druggists and physicians for remedial purposes,—and falls clearly within the term as employed by the acts of 1890 and 1897, a "medicinal preparation." The evidence in this case, as well as the manifest teachings of the Fink Case, shows that muriate of cocaine is a "medicinal preparation" in the same sense, and only in the same sense, as hydrate of chloral is. From all this it appears that the supreme court, when classifying muriate of cocaine in the Fink Case, was dealing with a similar substance to that now under consideration, and under the same provisions of the statutes.

Before stating the conclusions reached in this case, it is proper to say that the classification of chloral hydrate as made by the col-

lector and approved by the board of general appraisers is, "medicinal preparation, in the preparation of which alcohol is used." It was not claimed by them to be a "medicinal preparation" containing alcohol, but only one in which alcohol was employed in the process of its preparation. These are essentially different articles of importation, and recognized as such by the tariff act. There doubtless are many preparations which, when analyzed, disclose the presence of alcohol as a constituent element. There are also other preparations which, when analyzed, disclose no alcohol whatsoever, but in the preparation of which alcohol has been employed. This difference is well illustrated by the preparation now being considered. The usual, if not the only, practical method of producing it is to pass dry chlorine gas into or through absolute alcohol, and this process results in hydrate of chloral, with no remaining alcohol whatsoever in its component parts. So, when alcohol is employed as an instrumentality of making a medicinal preparation, it is dutiable as a distinctly medicinal preparation, even though the finished product may contain no alcohol whatever. So it appears that congress, by making use of the alternative in paragraph 67 of the act of 1897, must be held to have intended to make not only a medicinal preparation which contains alcohol as one of its component parts dutiable, but also any such preparation which, even though it contains no alcohol, has been prepared by the alcoholic process.

The plaintiff has taken some proof tending to show that chloral hydrate may be manufactured by certain processes from starch and sugar, or from acetal, the bye-product of the dry distillation of wood. It is claimed that in neither of these processes of manufacture is alcohol employed, and that neither of them results in a product which contains any alcohol; and plaintiff contends from this evidence that, inasmuch as there is no showing as to which process produced the chloral hydrate in question, it does not appear that it is dutiable at all as a medicinal preparation either containing alcohol or in the preparation of which alcohol is employed; and also contends that because of these several processes which may be employed in the manufacture of chloral hydrate the difficulty of ascertaining whether any particular importation is dutiable or not under the provisions of paragraph 67 of the act of 1897 is so great that congress must have intended to leave such preparations dutiable only as a "chemical compound." A fairly good answer to this contention is found in the provision of law requiring importers to make invoices and declarations containing a correct description of their imported merchandise. It can hardly be supposed—at any rate, the presumption cannot be indulged—that any importer would be so ignorant of the process employed in the manufacture of his merchandise, especially so when the law governing the classification of his importation requires him to know and disclose that fact. And inasmuch as the alcoholic process, according to the evidence in this case, is undoubtedly the almost universal process for manufacturing hydrate of chloral for commercial purposes, it would not be a difficult matter for an importer to ascertain whether any other exceptional and largely experimental process had been employed. But, of whatever little value may be the argu-

ment arising ex inconvenienti, it can have no bearing on this case. The plaintiff, in its protest, has admitted that the importation in question was one "in the preparation of which alcohol is used." As already seen, the classification as made by the officers of the government was of that kind, and plaintiffs' protest was not that the officers erred in classifying it as one "in the preparation of which alcohol is used," but, conceding it to be a preparation of that kind, it was urged that it was nevertheless dutiable only as a "chemical compound." An importer must stand on the objections made in his protest, and cannot vary from nor enlarge them in his petition for review, or on the trial. Arthur v. Morgan, 112 U. S. 495, 5 Sup. Ct. 241, 28 L. Ed. 825; Herrman v. Robertson, 152 U. S. 521, 14 Sup. Ct. 686, 38 L. Ed. 538; Heinze v. Miller, 144 U. S. 28, 12 Sup. Ct. 604, 36 L. Ed. 333; Presson v. Russell, 152 U. S. 577, 14 Sup. Ct. 728, 38 L. Ed. 559.

Application of the foregoing facts and principles of law leave the following question only for solution: Hydrate of chloral being undoubtedly a "chemical compound" in the generic sense, and being also a "medicinal preparation in the preparation of which alcohol is used," in a specific sense, and the only objection raised by the protest being that the substance should have been classified as a "chemical compound," and not as a "medicinal preparation," as done, has the plaintiff, upon whom the burden rests, made out a case requiring this court to reverse the action of the board of general appraisers at New York, because it did not classify it for duty as a "chemical compound"? The facts disclosed by the proof, in my opinion, bring this case within the principles of the Fink Case. It is there held, in substance, that when any article of importation may come within two classifications, one of which is more general and the other more specific, the proper rule requires the application of the more specific classification. The evidence in this case clearly establishes that a "chemical compound" is generic, and includes within it any specific medical preparation, and certainly such a specific medical preparation as either contains alcohol or is prepared by the use of alcohol; and, although chloral hydrate is undoubtedly a "chemical compound," it is more specifically defined as a "medicinal preparation," and, even more specifically than that, defined as a "medicinal preparation in the preparation of which alcohol is used." The evidence in this case, as well as the opinion of the supreme court in the Fink Case, shows that chloral hydrate stands in the same relation as muriate of cocaine does to "chemical compounds" and "medicinal preparations in the preparation of which alcohol is used"; hence the same rule of classification should be applied to both. The case before the court of appeals of this circuit, already alluded to, cannot be controlling of the judgment in this case for the following reasons: (1) The evidence relating to whether chloral hydrate is a "medicinal preparation" or not, and whether it is known in commerce or in the medical profession as such or not, is largely different from that before the court in the former case. New and important evidence was taken in this case on these questions, which did not appear in that case. (2) No question was raised in that case to the effect that plain-

tiff was bound by the objections made by it in its protest, and it does not appear that in that case plaintiff conceded that its importation was in fact a "medicinal preparation in the preparation of which alcohol is used." (3) The rule of construction of revenue statutes stated in the Fink Case, and its application to a substance like chloral hydrate, had not been announced by the supreme court before that case was decided.

It follows that the decision of the board of general appraisers at New York is approved, and judgment will be entered accordingly.