### UNITED STATES v. SHEA, SMITH & CO.

(Circuit Court of Appeals, Seventh Circuit.   January 21, 1902.)

#### No. 811.

CUSTOMS ADMINISTRATION—SUFFICIENCY OF PROTEST—EFFECT OF ERROR.
Under the procedure inaugurated by the customs administrative act of 1890, by which the decision of a collector is reviewed by a special tribunal, there is no necessity for exacting such nice precision in the protest of an importer, or such accurate knowledge of the law by him,

as to debar him from relief from an erroneous classification and, excessive assessment by the collector because he fails to designate correctly the provision under which the classification should have been made.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The substantial facts of this case are as follows:

During the years 1893 and 1894, while the tariff act of 1890 (26 Stat. 567) was in force, appellee imported at various times from Japan, through the Chicago Custom House, certain thin paper, which was assessed by the collector of the port as "tissue paper" at a duty of eight cents per pound and fifteen per cent ad valorem under paragraph 419 of the tariff act.

Being dissatisfied with this classification, the appellee, in apt time, filed its protests, adding thereto these words: "We claim that the goods in question are specially provided for and dutiable under paragraph 425, as 'manufactures of paper', dutiable at twenty-five per cent ad valorem."

The protests having come, in due course, before the Board of General Appraisers, March 31st, 1898, it was there held that the collector was wrong in assessing the merchandise "as tissue paper" under paragraph 419; also, that the paper did not come under paragraph 425—manufactures of paper—as claimed in the protests, but that it was properly dutiable under paragraph 422 of the act at twenty-five per cent. ad valorem, as "paper not specifically provided for". The Board, thereupon, over-ruled the protests and sustained the classification of the collector, solely upon the ground that the protests had mistakenly pointed out section 425, and had failed to point out section 422, as the paragraph under which the goods were dutiable.

On appeal to the Circuit Court, the classification adopted by the Board of General Appraisers was approved, but the ruling of the Board, that the protests were insufficient and that the original classification by the collector must on that account stand, was over-ruled; and a decree was entered ordering the collector to return to the appellee the difference between the rate of eight cents per pound and fifteen per cent ad valorem, as provided for in section 419, and the rate of twenty-five per cent ad valorem, as provided in section 422.

From this ruling of the Circuit Court this appeal is prosecuted.

Oliver E. Pagin, Asst. U. S. Dist. Atty., for appellant.

Wm. Brace, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

GROSSCUP, Circuit Judge (after stating the facts). Section 14 of the Customs' Administrative Act of June 10, 1890 (26 Stat. 137)—a reenactment of the previous provisions on the same subject—provides:

"That the decision of the collector, as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges and exactions other than duties, shall, within ten days after, but not before, such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges and exactions, if dissatisfied with such decision give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon."

It is insisted, at argument, that appellee's omission in its protests to point out section 422, and its reliance upon section 425 as the one under which the paper was properly dutiable, were calculated (though not intended) to mislead the collector, and that the protests are on that account insufficient and void.

The argument runs thus: The collector is not presumed to know the law; the object of the protests, as required by section 14, is not merely to challenge the applicability of the section under which the assessment is made, but requires with like precision that the section under which it ought to have been made be pointed out; and a failure in the latter requirement is fatal to the sufficiency of the protests. Many cases are cited in support, among others: Curtis v. Friedler, 2 Black, 461, 17 L. Ed. 273; Davies v. Arthur, 7 Fed. Cas. 43 (No. 3,611); Cummins v. Robertson (C. C.) 27 Fed. 654; In re Austin (C. C.) 47 Fed. 873; Herrman v. Robertson, 152 U. S. 521, 14 Sup. Ct. 686, 38 L. Ed. 538.

In the latter case the importation was of certain goods assessed by the collector of the port of New York, as being liable to a duty of fifty cents per pound and thirty-five per cent ad valorem, while the protest insisted that they should pay a duty of thirty-five per cent ad valorem, only, under the second half of section 2499 of the then existing tariff laws (1881). The Circuit Court having found that the goods were properly dutiable under neither of these schedules, but, under another schedule, held that the protest was, for that reason, insufficient; and this holding was affirmed by the Supreme Court in the following language:

"The protest failed to point out, or suggest in any way, the provision which actually controlled, and, in effect, only raised the question which of two clauses, under one or the other of which it was assumed that the importation came, should govern as being most applicable. We agree with the Circuit Court, in holding the protest to have been insufficient."

This decision would seem to be in point, but it must be noted as having been made in a case coming under the tariff act previous to that of 1890, and at a time that the Customs' Administrative Act of June 10, 1890, was not in force.

A later case—U. S. v. Salambier, 170 U. S. 621, 18 Sup. Ct. 771, 42 L. Ed. 1167—was one arising under the two acts of 1890. The importation in that case was of certain merchandise, consisting of sweetened chocolate in the form of small cakes or tablets, manufactured from cocoa sweetened with sugar, known commercially as "Sweetened Chocolate", and was classified by the collector of the port of New York "as confectionery not specially provided for" at fifty per cent ad valorem under paragraph 239 of the act. The protest challenged this classification, claiming that the goods were dutiable at two cents per pound, but not pointing out the paragraph under which such claim was made. Two paragraphs of the act—318 and 319—impose a duty of two cents, the first, upon "chocolate", and the second upon "cocoa, prepared or manufactured". On review, the Board of General Appraisers held that the goods were dutiable at two cents per pound as "cocoa" under paragraph 319, and further, that the failure of the importer to specifically claim

under such paragraph did not vitiate the protest. This ruling was affirmed by the Circuit Court, and on appeal by the Supreme Court, Justice Shiras saying:

"The object of the statute, in requiring a protest, was to distinctly inform the collector of the position of the importer. In this instance, it was impossible for the collector to have read the protest without perceiving that his classification of the merchandise, as dutiable under paragraph 239 of the tariff act, at fifty per cent ad valorem, was objected to, and that the importer claimed that, under the law, the goods were dutiable at two cents per pound. The collector could not have been perplexed by the omission to name the specific paragraph which the importer sought to have applied, for there were but two paragraphs, besides 239, which dealt with the subject, namely paragraphs 318 and 319, and under either of them the duty was that claimed by the importer, two cents per pound. * * * We are not disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint and his design to make it the foundation for a claim against the government."

The Salambier Case is in all respects identical with the case under consideration, except that in this case the protest, in fact, named the section, as well as the rate of duty, on which it was claimed the assessment ought to have been made. We are of the opinion that as customs' duties are now levied, subject to review by the Board of General Appraisers, this mistake of the importer did not, in effect, make his claim indefinite or indistinct, and was not calculated to mislead.

The Customs' Administrative Act of 1890 created for the first time a Board of General Appraisers. Prior to that time, the classification of the collector was final, except under complaint to the Secretary of the Treasury. The procedure was to appeal directly to the courts, and, if successful, to recover from the Treasury the excess paid, together with the costs of the suit.

Under the procedure inaugurated by the act of 1890, the ruling of the collector comes under review of the Board of General Appraisers; and in such appeal no cost is incurred. The Board is, in a sense, an essential part of the Custom House machinery.

The sole function of this Board is to hear cases of this character, and to discriminate between the paragraphs of the law applicable to given importations. Upon all the questions that arise in disputes between importers and the collector, the appraisers are probably better informed than any tribunal in the country. They will be presumed to know the law—especially when the rate of duty, as claimed, is pointed out. It is no part of the purpose of the law as it now stands to exact such nice precision that the importer may not indicate his impression as to what paragraph governs except at his peril.

We are of the opinion that under the Salambier Case, and on independent construction of the law as it now stands, this decree should be affirmed.