## *In re* APPEAL OF H. HAMANO FROM DECISION OF BOARD OF GENERAL APPRAISERS AT NEW YORK.

### DECIDED: JANUARY 6, 1903.

1. Upon an appeal to this court under Section 15 of the Customs Administrative Act of June 10, 1890 (26 U. S. Stats. 137), by an importer of certain articles of merchandise known as Japanese shoes or slippers, where it appeared that the only ground of protest stated by the protestant in his notice of protest to the Collector under the provisions of Section 14 of the said Customs Administrative Act, and on the hearing had by the Board of General Appraisers at New York, upon appeal from the decision of the said Collector, was error in the classification and assessment of the said articles by the Collector, in that the same should have been classified as "boots and shoes made of leather," under Paragraph 438 of the Tariff Act of 1897 (Vol. 30, U. S. Stats. 193), instead of "manufactures of leather," under Paragraph 450 of said Act; and where the decision of the Board of General Appraisers overruled the protest, but classified the said merchandise as dutiable under Paragraph 93 of said Tariff Act, *Held,* that protestant cannot on appeal to this court from the decision of the Board of General Appraisers at New York. allege as error on the part of said Board the fact that it disregarded the provisions of Section 7 of the Tariff Act, the so-called "similitude clause." It was not possible under the language of the original protest to do this. The protestant is confined to the allegations of his protest made to the Collector of the Customs and upon which the Board of General Appraisers acted.

2. An importer must stand on the objections raised in the original protest, and cannot vary from nor enlarge them in his petition for review or on the trial.

3. It is prescribed by Section 14 of the Customs Administrative Act, that the person dissatisfied with the decision of the Collector of Customs, shall give notice to the Collector setting forth therein "specifically and distinctly........the reasons for his objections thereto." That was done by the importer in this case; and that must stand as the alleged error appealed from.

4. While a protest is not required to be made with technical precision, yet it must show that the objections afterwards made at the trial were in the mind of the party, and were brought to the knowledge of the Collector at the time of making them.

5. Where no evidence was offered on the part of protestant at the hearing before the Board of General Appraisers, the said protestant not appearing at said hearing, although due notice had been given him thereof, and the only finding of fact by said Board is as to the materials of which the articles of merchandise are composed, based upon an analysis made by the analyst in charge of the analysis of textile fabrics in the Appraisers' office, the component material of chief value being found to be, not leather, but rawhide; and where said analysis showed that one of the component parts of the said merchandise was iron, *Held,* that as manufactures of rawhide are nowhere provided for in the Tariff Act of 1897, and there is no other component part of chief value, that the classification of the Board of General Appraisers as "articles or wares not specially provided for, composed wholly or in part of iron" (Par. 93, Tariff Act), is the correct one, and the decision of the said Board is affirmed.

6. The Board of General Appraisers was established to determine controversies in relation to the proper classification of articles under the Tariff Act of 1897, and the decision of such Board should not be overruled, unless clearly against the weight of the evidence.

APPEAL FROM DECISION OF BOARD OF GENERAL APPRAISERS UNDER SECTION 15, CUSTOMS ADMINISTRATIVE ACT OF JUNE 10, 1890, (U. S. STATS. VOL. 26, P. 131.)

*R. W. Breckons,* U. S. District Attorney, for the government.

*Thomas Fitch & Henry E. Highton,* attorneys for appellant.

ESTEE, J. H. Hamano is a Japanese merchant, engaged in business in Honolulu, in the importation and sale of Japanese shoes and slippers.

On the 31st day of December, 1900, certain of these so-called shoes or slippers arriving here from Japan, were classified by the Collector of Customs at Honolulu as "manufactures of leather," and assessed as dutiable at the rate of 35% *ad valorem,* under the provisions of Section 450 of the Tariff Act of 1897 (Vol. 30, U. S. Statutes, page 193), which reads as follows:

"Manufactures of leather, finished or unfinished,......or of which these substances, or either of them, is the component ma-

terial of chief value, not especially provided for in this Act. . . .
thirty-five per cent. *ad valorem."*

Within the statutory time, the said H. Hamano filed his no-
tice of protest and appeal against said classification and duty,
with the Collector of the Customs at Honolulu.   He appealed
pursuant to the terms of Section 14 of the Customs Adminis-
trative Act of June 10, 1890, (Vol. 26, U. S. Statutes), and
the importer claimed that the articles known as leather shoes
or slippers were dutiable under the provisions of paragraph 438
of the Tariff Act of 1897, which reads in part as follows:

"Paragraph 438. . . . . . . .Boots and shoes made of leather,
twenty-five per centum *ad valorem.* . . . ."

Upon receipt of the said protest and notice of appeal, the
Collector of Customs transmitted to the Board of General Ap-
praisers of New York, the protest, invoice, and all the papers
connected with the matter of said appraisement.

On the third day of September, 1901, a decision was ren-
dered by the said Board of General Appraisers in New York,
in which they state, among other things, that:

"The merchandise in question consists of Japanese slippers,
composed of raw hide, cotton, straw, silk, iron, etc.; that they
were classified as dutiable as manufactures of  leather under
paragraph 450 of the Tariff Act of 1897, at 35 per cent. *ad
valorem,* and are claimed by the protestant to be dutiable as
leather shoes under paragraph 438 at 25 per cent. *ad valorem.*
As there is no leather in the articles, raw hide not being leather,
it seems that neither of said provisions includes these slippers."

Then follows an analysis, which shows that:

"Rawhide is the component part of chief value, namely, 40.32,
while the other proportions of materials are as follows:   Straw
. . . .25.407, cotton. . . .16.599, silk. . . .11.395, iron. . . .2.123,
and other materials 4.157."

The decision further stating that:   "It would appear from
this analysis that there being no provision for the manufactures
of rawhide, and none of the other materials being the com-
ponent of chief value, the particular articles covered by said
protest are properly dutiable under paragraph 193, at the rate

of 45% *ad valorem*, as 'articles or wares not specially provided for or composed wholly or in part of iron,' "

"Articles or wares not specially provided for in this Act, composed wholly or in part of iron   *   *   *   or other metal, and whether partly or wholly manufactured, 45 per cent. *ad valorem*." Par. 93, page 167, 30 U. S. Statutes.

The decision finally overrules the protest and affirms the decision of the collector, "without, however, approving the classification complained of by the protestant."

Upon the appeal taken to this Court, the appellant alleges as error on the part of the Board of General Appraisers, the following:

"That said board erred in overruling or disregarding the provisions of Section 7 of the Tariff Act of 1897, in that the untanned leather, or rawhide, which is the component of chief value in said shoes, is similar in material, in quality, in texture and in the use to which it may be and was applied, to leather."

This was the first time that protestant raised any question of similitude or intimated any reliance upon the so-called similitude clause of the Act (Section 7 thereof), Vol. 30 U. S. Stats. 205.

In accordance with the petition on appeal to this court, an order was issued out of this court on October 2, 1901, directed to the Board of three General Appraisers at New York, ordering the said board to return to this court the record of said matter, and the evidence taken by them therein, together with a certified statement of the facts involved in said case, and their decision thereon. On November 14, 1901, the said Board of three General Appraisers made a return to this Court, consisting of the letter of the Collector of Customs at this port sent to the said Board of General Appraisers, the original protest of the importer, and the decision of the Board thereon.

Thereafter, upon application of counsel for the importer, this court made an order reciting that, as the original return made to the first order did not contain all the evidence taken by them, that the said Board were directed to return to this Court all the evidence taken in the matter; and also made a further order, at

the same time, to-wit: January 21, 1902, referring the whole subject to H. M. Somerville, one of the said Board of General Appraisers, for the taking of such further evidence in the matter as might be offered by the petitioner or by the United States.

Thereafter, on February 25, 1902, there was returned to this Court a supplemental return from the said Board of General Appraisers at New York, in the same terms as the original return with an additional exhibit in the form of the original analysis of the merchandise in controversy, and stating that, "The importer failed to appear at the hearing, either in person or by counsel, and that no evidence was offered by him, as under the ruling of the Court he was required to do."

A return was also made to the Court on November 25, 1902, by H. M. Somerville, the special appraiser appointed by the Court, to take further testimony, in which he states: "That upon the day set for the taking of the testimony and after the formal notice of the time and place of the hearing had been given to counsel for appellant, naming him, the said counsel failed to appear, or to offer any further evidence."

It appears that in the written notice of protest filed with the Collector of the Customs, and forwarded to the Board of General Appraisers, but one ground of objection was relied upon by the importer, the following being the language of that protest:

"The grounds of our objections are that the said shoes were classified and duty assessed under paragraph 450, Tariff Act of 1897, as manufactures of leather, N. S. P. F., dutiable at the rate of thirty-five per centum (35) *ad valorem*; we claim the said articles to be either a leather shoe or slipper, the same being properly dutiable as specially provided for under paragraph 438, Tariff Act 1897, at the rate of twenty-five per centum (25%) *ad valorem*."

Upon the hearing and in the application for the order to issue to the Board of General Appraisers, it appears that protestant now bases his case on appeal to this Court mainly on the alleged error of the Board of General Appraisers in failing to

consider the similitude clause of the Act, so-called, namely, Section 7 thereof.

It was not possible under the language of the original protest for appellant to do this. He is confined to the allegations of his protest made to the Collector of the Port, and upon which the Board of General Appraisers acted. As was said by the Supreme Court of the United States in the case of *Davies v. Arthur*, 96 U. S. 148:

"Technical precision is not required, but the objections must be so 'distinct and specific' as when fairly construed, to show that the objection taken at the trial, was at that time in the mind of the importer, and that it was sufficient to notify the Collector of its true nature and character, to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect, if it was one which could be thus obviated."

That was an action under the provisions of the Act of 1864, which provided for a suit against the Collector personally to recover duties illegally collected, but which provided that the importer, if dissatisfied with the decision of the Collector, should give notice in writing, setting forth "distinctly and specifically the ground of his objection." This is the law to-day. See Sec. 14, Act of Congress of June 10, 1890, Vol. 1, Supplement of the Revised Statutes, page 571. It is prescribed by Section 14 that the person dissatisfied with such decision (of the Collector of Customs) shall give notice to the Collector setting forth therein "distinctly and specifically......the reasons for his objections thereto." That was done by the importer in this case, and that must stand as the alleged error appealed from.

See the case of *In re Collector (Sherman et al., Importers)*, 55 Fed. 276, 278, where the Circuit Court of Appeals says:

"Congress reproduced in the Customs Administrative Act the identical language as to the terms of the protest used in the previous Acts, and declared as explicitly as could be done by language, that in the absence of such notice, the decision of the Collector should be final and conclusive. It must be presumed that this was done with the full understanding of the settled

judicial construction of the provision under the previous Acts of Congress, and, therefore, that Congress intended that the importer should be bound by his own statement of the objecttions to the Collector's decision, and should not be permitted to depart from it, by alleging subsequently any error of fact or of law, not substantially brought to the collector's attention by the terms of the notice."

The Court further saying:

"Congress might have relieved the importer of any such conditions as a prerequisite to his recovery if it had seen fit; but it is plain that it intended only to change the nature of his remedy without enlarging the previously existing conditions precedent to his right of recovery."

See also *Hahn v. Erhardt*, 78 Fed. 620-621 (C. C. A.), where the Court says:

"The similitude provision is intended to prescribe the duty to which articles are to be subjected that have been omitted in the enumeration of dutiable articles in the schedules of the tariff laws. It has no application when the imported articles can be identified with any of those articles described in any of the schedules. If the importer asserts in his protest that his merchandise belongs to the category of enumerated articles, he asserts by implication that its dutiable character is not to be ascertained by reference to the similitude provision."

In this case the importer does claim the dutiable character of the imports to be under paragraph 438 of the tariff law.

See *In re Sherman et al.*, 49 Fed. Rep. 224; *In re Guggenheim Smelting Co.*, 112 Fed. Rep. 517; *Battle & Co. Chemists' Corp. v. U. S.*, 108 Fed. Rep. 216.

To repeat, as to the question of similitude, an importer must stand on the objections made in the original protest, and cannot vary from nor enlarge them in his petition for review or on the trial. *Battle & Co., etc., v. United States*, 108 Fed. Rep. 216; *Arthur v. Morgan*, 112 U. S. 495; *Herman v. Robertson*, 152 U. S. 521; *Heinze v. Arthur's Executors*, 144 U. S. 28; *Presson v. Russell*, 152 U. S. 577; *Hahn v. Erhardt*, 78 Fed. Rep. 620-621; *Davies v. Arthur*, 96 U. S. 148.

So it was held in *In re Guggenheim Smelting Co.*, 112 Fed. 517, that the protest in that case was insufficient in failing to point out the provision under which the Collector should have acted. The Collector's decision must therefore stand.

While a protest is not required to be made with technical precision, yet it must show that the objections afterwards made at the trial were in the minds of the party, and were brought to the knowledge of the Collector at the time of making them. *Arthur v. Morgan*, 112 U. S. 495; *U. S. v. Salambier*, 170 U. S. 621, 627; *Shell's Executors v. Fauche*, 138 U. S. 562; *Heinze v. Arthur's Executors*, 144 U. S. 28; *Herman v. Robertson*, 152 U. S. 521.

It seems clear to this Court that if the importer had intended in this case from the beginning to rely upon the similitude clause of the Customs Administrative Act for the purpose of identifying his merchandise, he should have "distinctly and specifically set forth" that fact in his protest to the Collector, as one of the specific objections to the Collector's rulings. It is not possible for this court to now consider on appeal, any ground of protest, unless made to the Collector at the time the classification was made.

Again in this case, the only finding of fact is as to the materials of which the merchandise is composed. No evidence of any character was offered on the part of the protestant. It appears that an analysis was made by Rudolph Streuli, upon which the decision of the Board was based, he being the analyst in charge of the bureau for the analysis of textile fabrics of the Appraisers' office; which original analysis is attached to the supplemental return filed in this case, and which has been examined by the Court. In this analysis rawhide is declared to be the component of chief value. There is nothing in the record, so far as the Court can find, attempting to show that the rawhide, of which these articles are largely composed, is leather. Even if it be conceded that the protestant had the power under his original protest to show that rawhide, such as is used in the manufacture of these articles, is leather, he made no effort to do so. But under the definition popularly accepted of leather,

rawhide is not included. The Century Dictionary, a recognized authority, defines leather to be "the tanned, tawed or otherwise dressed skin of an animal......the peculiar character of leather is due to the chemical combination of tannin in the process of tanning, or of tannin and vegetable extractive matter (or else of some mineral or earthy base) with gelatin as contained in animal skin. Its physical characteristics, such as flexibility, tensile strength, color and durability, are more or less modified by the processes subsequent to the use of the chemical named, and included in the various operations of currying and dressing."

While the same dictionary defines rawhide to be "the material of untanned skins of cattle, very hard and tough when twisted in strips for ropes or the like, and dried......"

The distinction evidently being in the tanning or lack of tanning of the skin.

In the absence of any evidence to the contrary, the finding of the fact by the Board of General Appraisers will not be disturbed. *Meyers v. U. S.*, 110 Fed. Rep. 940; *Page et al. v. U. S.*, 113 Fed. Rep. 1006.

While it is true that the amount of iron in these articles is very small, being only 2.122 per cent. of the value of the entire article, as shown by the aforesaid analysis, yet it is sufficient to affect their classification in the event that the same are not otherwise provided for or specially enumerated in the Act. See the cases of *Seeberger v. Farwell*, 139 U. S. 608; *Magone v. Luckemeyer*, 139 U. S., 612; in the latter case it was held that woolen goods, having in the warp quantities of cotton varying from 1.99 to 6 per cent., were sufficient to have that effect.

And in this case, the component part of chief value is not leather, but rawhide, which is nowhere provided for in the Act, and as there is no other component material of chief value, then the classification of the Board of General Appraisers as "articles or wares not specially provided for, composed wholly or in part, of iron," (Paragraph 193 of the Tariff Act of 1897) would seem to be the correct one.

The Board of General Appraisers was established to determine controversies in relation to the proper classification of articles

under the Tariff Act of 1897, and the decision of such Board should not be over-ruled unless clearly against the weight of evidence. *Bader v. U. S.*, 116 U. S. 541, 548. There is no conflict of evidence in this case, because the importer has presented no testimony.

An importer after appealing to the Board of General Appraisers must appear at the hearing or the action of the Collector will be affirmed.

See the case of the *United States v. China and Japan Trading Co.*, 71 Fed Rep. 864, where it was held that if an importer who has appealed to the Board of General Appraisers from the decision of the Collector as to the classification of merchandise, fail's to appear pursuant to such Board's notification to show cause why the action of the Collector should not be affirmed, the Board is entirely justified in affirming the Collector's decision, without regard to its correctness.

In this case, although it came before the General Appraisers twice, notice being given the attorney for the importer each time, the importer never introduced one word of testimony.

It is now over two years since this appeal was first taken, and during all that time petitioner has taken no apparent interest in the case.

It has been held that the burden is on the importer on appeal to prove that the Collector's action was wrong, and if he fails in sustaining this burden, the action of the Collector stands, even though it appears that the Collector has selected the wrong paragraph. *Tiffany v. U. S.*, 105 Fed. 766.

There is no controverted question of fact in this case, because the importer at no time appeared before the General Board of Appraisers to controvert the action of the Collector. *Bader & Co. v. United States*, 116 Fed. Rep. 541. For the following, among other reasons, the action of the general appraisers is confirmed, with costs:

1st.   That the similitude statute does not apply in this case, and

2nd.   That the importer did not appear before the Board of General Appraisers at the trial.